IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YAZZMINE GALLIMORE,              :
   Plaintiff,                    :
                                  :

   v.                            :          CIVIL ACTION NO. 25-CV-6089
                                    :

MERAKEY, *et al*,                :
   Defendants.                   :

## MEMORANDUM

**SCOTT, J.**                                         APRIL **6**, 2026

In a prior decisions, the Court dismissed the *pro se* Complaint and Amended Complaint

filed by Yazzmine Gallimore asserting claims under Title VII of the Civil Rights Act of 1964

("Title VII"). *Gallimore v. Merakey*, No. 25-6089, 2026 WL 309489, at *1 (E.D. Pa. Feb. 4,

2026) ("*Gallimore I*"); *Gallimore v. Merakey*, No. 25-6089, 2026 WL 510725, at *1 (E.D. Pa.

Feb. 24, 2026) ("*Gallimore II*"). Gallimore was granted leave to file a second amended

complaint. *Gallimore II*, 2026 WL 510725, at *4. She has now returned with a Second

Amended Complaint ("SAC") consisting of the Court's employment discrimination form

complaint available to *pro se* litigants and attached typewritten pages. Because on her third

attempt Gallimore has again failed to allege facts to make her claims plausible, the case will be

dismissed with prejudice.

## I.      FACTUAL ALLEGATIONS[1]

Gallimore's original Complaint consisted of the complaint form for filing employment

discrimination claims as well as materials that she had submitted to the EEOC. By checking

---

[1] Unless otherwise stated, the facts are taken from Gallimore's Second Amended
Complaint (ECF No. 14). The Court adopts the pagination supplied to all *pro se* submissions by
the CM/ECF docketing system.

boxes on the form, Gallimore, who stated she is African American, appeared to assert race discrimination claims based on termination of her employment, a failure to stop harassment, and retaliation. (Compl. at 4-5.) In the area of the form that asked Gallimore to state the facts of the case, she only wrote "see attached documents." (*Id.* at 5.) The documents included three "Right to Sue" letters issued by the EEOC containing three different Charge Numbers. (*Id.* at 9-15.) There was also a two-page typed document discussing Gallimore's experiences at her "first environment" at Merakey from which she was terminated on July 16, 2024, a "new job" at "youth advocate programs in Lancaster" where "the discrimination continued," and a third job she "started at Laurel Life on April 14, 2025" where she allegedly also experienced discrimination and was fired on June 27, 2025. (*Id.* at 16-17.) In the first prior Memorandum, the Court noted that it was unclear from Gallimore's submission whether these three incidents arose from different jobs with different employers since she identified the Defendant on the form as "Merakey/Youth Advocate Programs/Laurel Life," while providing only an address for where she was employed at "Merakey" in Kennett Square, Pennsylvania. *Gallimore I*, 2026 WL 309489, at *4 n.4.

Gallimore filed her Amended Complaint using the Court's generic form for *pro se* litigants, rather than the specific form for filing employment discrimination claims. (Am. Compl. *generally.*) She again named several entities — Merakey, Youth Advocate Programs, and Laurel Life — but did not specify which, if any of them, was her employer. (*Id.* at 2.) Rather, she referred to them as "work locations," and claimed she was discriminated against at each work location because of her race. (*Id.* at 3.) She also reported harassment. (*Id.*) She mentioned in conclusory fashion that several individuals created a hostile work environment but failed to allege any facts about this claim. (*Id.*) She alleged that two other individuals

discriminated and retaliated against her "after reporting it to the unemployment agency" and mentions others that were "involved" in discriminating against her "for [her] race and retaliated after [she] reported it," but again provided no facts or context for these statements. (*Id.*) The claims were dismissed because, while she alleged race discrimination, she did not state her race in the Amended Complaint or that she was otherwise a member of a protected class, and the failure to specify what employer was involved made her retaliation allegations not plausible. *Gallimore II*, 2026 WL 510725 at *3-4.

In the SAC, Gallimore states that she is African American and asserts Title VII termination and retaliation claims against Merakey[2] and two of its employees, Megan Hunsberger and Amena Habib.[3] (SAC at 4-5.) On the form section of the SAC, she asserts in conclusory fashion that she was discriminated against and experienced harassment from August 10, 2023 to July 12, 2024 and, after reporting it to supervisors and it continued, she was terminated. (*Id.* at 5.) In the typewritten pages she alleges she received write-ups based on her work performance beginning around December 13, 2023. (*Id.* at 8.) Beginning in August, 2023, Gallimore started noticing that "encounter forms" she submitted were missing and supervisors were asking her to repeat the same work tasks. (*Id.*) There was a complaint from a client on

---

[2] Although Merakey is the only employer now named in this case, Gallimore has filed separate civil actions asserting Title VII claims against other employers named in the prior versions of her pleadings, in accordance with the Court's prior instructions. *See Gallimore v. Youth Advacate Programs*, No. 26-1970 (E.D. Pa.); *Gallimore v. Laurel Life*, No. 26-1974 (E.D. Pa.), and *Gallimore v. Siza Educational Services*, No. 26-1975 (E.D. Pa.).

[3] In *Gallimore II*, the Court advised Gallimore that she may not assert claims under Title VII against individuals who are not her employer, including any coworkers or supervisors since the United States Court of Appeals for the Third Circuit has declined to extend liability under Title VII to individuals, holding the term "employer" as used in Title VII does not encompass individual employees. *Id.*, 2026 WL 510725 at *4, n.3 (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996). Ignoring this admonition, she has named two coworkers as Defendants who will be dismissed with prejudice.

September 1 – presumably involving a social services program mentioned in an earlier version of her pleading, but unstated in the SAC. (*Id.*) The client claimed that Gallimore spent the session on her laptop and "wasn't doing anything." (*Id.*) In response to the client complaint, she assured Defendant Hunsberger that she was working and the "laptop was for what we were working on," she asked Amena Habib for professional development help, and was told she could play an Uno game with her clients to build rapport with them. (*Id.*) She received a write-up on December 13 that charged that she was sleeping and on her phone during a "group supervision" and had refused to work until she "received an answer about mileage reimbursement." (*Id.*) Gallimore claimed she was not sleeping but only had her hand rested on her head waiting for the group supervision to begin. (*Id.*) Hunsberger "used intimidation during this interaction of the group supervision to single [her] out" and requested that Gallimore come into her office. (*Id.*) In the office, Hunsberger told her that she would not talk about it and gestured to stop Gallimore from speaking, leading Gallimore to state that she did not feel she was "advocated for in terms of the complaints being made." (*Id.*) Hunsberger asked her to sign the "complaint," she complied, and continued to look for a different employment while she continued to work at Merakey. (*Id.*)

On February 1, 2024, she exchanged emails with Habib about lack of communication. (*Id.*) Prior to the emails, Gallimore was asked to communicate session cancellations in which she did work for a specific client. (*Id.* at 9.) In an email on February 1, Habib stated that Gallimore "didn't do it" and wasn't going to be "doing anything in the office." (*Id.*) Emails the following day with Hunsberger concerned an apparent failure by Gallimore to complete progress notes; Gallimore stated her plan for doing it but, in a follow up email, Hunsberger again asked for her plan. (*Id.*) When Gallimore completed them, Hunsberger again made claims that she did not do them and Hunsberger wasn't seeing them, leading to additional back-and-forth emails.

(*Id.*)  She and Hunsberger also exchanged texts on February 15, 2024, disputing Gallimore's completion of "encounter forms." (*Id.*)  When Gallimore attempted to discuss it with Habib via text messages, Habib threatened another corrective action if the encounter forms were not sent by 5pm that day. (*Id.*)  Gallimore told Habib that she was unsure why she was "being held accountable for missing progress notes and encounter forms." (*Id.*)  She received another write-up on March 1, 2024 about these interactions, in which Habib stated that Gallimore failed to meet the 5pm deadline. (*Id.*)  Gallimore claims there was a "consistent changing of rules constantly, making it hard to keep up good work performance" at Merakey. (*Id.*)

Gallimore also had a dispute about billing for services if she did not meet with the client family. (*Id.*)  On June 13, 2024, she exchanged texts with Habib at 8pm while she was driving "about the need for a signature" on a treatment plan but Gallimore became busy with homelife and didn't sign the treatment plan until the next morning. (*Id.* at 10.)  The next day, she received the final "complaint" from Habib about the treatment plan she failed to sign. (*Id.*)  On July 12, 2024 Merakey told her not to meet with families and to complete progress notes, and terminated Gallimore the next day after she completed the notes. (*Id.*)  Concerning the billing dispute, right before she was fired, Habib told her she actually had to make contact with the family in order to bill for travel. (*Id.* at 9.)  Later, she was informed that one of the reasons for her termination was for "billing services not rendered" because she attempted to bill for the travel she made to a family who did not appear for the session. (*Id.*)

Following her termination, Merakey disputed her claim for unemployment insurance ("UI") benefits, including asserting that Gallimore did "not return a on-call call, and that [she] 'did not provide quality services when [she] played an Uno game with a client.'" (*Id.* at 10.)  When Gallimore read this, she remembered that her "white partner" told her "that she missed an

on-call call and played the same Uno game and was not discharged or reprimanded in the same way." (*Id.*) She raised allegations of discrimination with the UI appeal referee after Merakey filed its contest based on her work performance issues. (*Id.*). She claims she was successful in the appeal and received benefits. (*Id.*) Gallimore alleges that Merakey discriminated against her and then fired her in retaliation after "reporting it" to supervisors and the UI agency. (*Id.*) She also claims she was subjected to a hostile work environment and seeks money damages for her claims. (*Id.*)

## II.    STANDARD OF REVIEW

Because the Court granted Gallimore leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the SAC as true, draw all reasonable inferences in the Gallimore's favor, and ask only whether the SAC contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v.*

*Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes *pro se* allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112). Gallimore's SAC again fails to allege plausible discharge, retaliation, and hostile work environment claims under Title VII.

### A. Termination

To state a claim for employment discrimination under Title VII, a plaintiff must allege sufficient facts to raise a reasonable expectation that her membership in a protected class was "either a motivating or determinative factor" in her employer's adverse employment action. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Gallimore asserts she is

African American and was discharged by Merakey, but she fails to allege facts to raise a reasonable expectation that her membership in a protected class was either a motivating or determinative factor in Merakey's termination decision. Rather, she mentions numerous instances of complaints concerning job performance with clients, failing to submit paperwork, and failing to following employer rules, much of which she concedes. For example, when accused of sleeping during a group supervision and refusing to work over unanswered questions about mileage reimbursements, she denied only the sleeping part of the accusation, and signed the complaint paperwork given to her by Hunsberger. (*Id.*)

But noticeably absent are any allegations suggesting an inference of race-based discrimination, rather than performance-based reasons for her termination. Her only assertion is that another employee who is white was not terminated. Besides that crucial difference in protected class, a comparator employee must be similarly situated in all relevant respects. *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881-82 (3d Cir. 2011) (citing cases and stating "[a]lthough this court has not explicitly stated what constitutes a similarly situated employee, we accept the standard used by other circuits that to be considered similarly situated, comparator employees must be similarly situated in all relevant respects"). The individual Gallimore identifies is not alleged to be similar in all relevant respects. While she claims the individual also missed an on-call call and played the same Uno game, Gallimore does not allege that the individual had the same other repeated performance issues regarding improper billings, failures to complete paperwork, and failing to follow work rules but was not terminated. Accordingly, having failed to allege plausibly that her race was either a motivating or determinative factor, the discriminatory termination claim will be dismissed.

**B.    Retaliation**

The retaliation claim also fails.  As the Court instructed Gallimore previously, for a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Gallimore I*, 2026 WL 309489, at *3 n.3 (citing *Connelly*, 809 F.3d at 789). Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).  Not every complaint about employment entitles its author to protection from retaliation under Title VII. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).  "Rather, only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute 'protected activity.'" *Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (*per curiam*) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)).  "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII." *Id.* at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).  "General complaints of unfair treatment will not suffice." *Id.* (citing *Barber*, 68 F.3d at 702).

Gallimore's allegations of retaliation in the workplace are not plausible.  While she raises general complaints of unfair treatment concerning work rules and company policies for which she was reprimanded for failing to follow, she does not allege that she engaged in any specific Title VII protected conduct during her employment with Merakey.  Her allegation that she was

discriminated against by Merakey and fired in retaliation after "reporting it" is too vague to nudge her "claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, because, on the third iteration of her claim, she again provides no facts about reporting discrimination to company supervisors while she was employed.

Gallimore also alleges that Merakey retaliated against her by contesting her entitlement to UI benefits, that she reported Merakey's allegedly discriminatory conduct to the UI agency, and eventually won her benefits case. "An employer's opposition to a plaintiff's claim for unemployment compensation can constitute post-employment retaliation because it can affect a plaintiff's future employment opportunities." *McIntyre v. County of Delaware*, No. 18-5066, 2019 WL 3934914, at *4 (E.D. Pa. Aug. 19, 2019) (citing *Stezzi v. Citizens Bank of Pennsylvania*, No. 10-4333, 2012 WL 4717900, at *4 (E.D. Pa. Oct. 4, 2012) (holding that allegation that the employer, upon gaining knowledge that the employee filed an EEOC discrimination claim against it, retaliated against her by contesting her unemployment compensation benefits, stated a plausible post-termination retaliation claim)); *see also Roe v. McKee Mgmt. Assocs., Inc*, No. 16-5520, 2017 WL 690538, at *7 (E.D. Pa. Feb. 21, 2017) (collecting cases holding that a plaintiff can allege a *prima facie* case of Title VII retaliation based on their former employer's opposition to their unemployment claims). For the action of contesting UI benefits to be a plausible basis for a claim of post-termination retaliation, there must be an allegation that the "former employer had influence over a subsequent employment-related decision, and that his former employer made a retaliatory use of that influence to the detriment of the plaintiff's employment opportunities." *Boandl v. Geithner*, 752 F. Supp. 2d 540, 567 (E.D. Pa. 2010). In other words, "a plaintiff must allege a connection between the protected activity and the contest of unemployment benefits." *McIntyre*, 2019 WL 3934914 at

*4 (citing *Boandl*, 752 F. Supp. 2d at 567). Gallimore fails to allege this type of connection. She does not allege that Merakey opposed her UI claim *because* she had engaged in protected conduct; rather a liberal reading of her allegations shows only that she raised an allegation of discrimination *after* Merakey filed its contest based on her work performance issues. (*See* SAC at 10.) Because she fails to allege the post-termination conduct of contesting UI benefits was caused by Title VII protected activity, her retaliation claim will also be dismissed.

### C.    Hostile Work Environment

To plead a hostile work environment claim, a plaintiff must allege: (1) she suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (cleaned up)); *Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).

Gallimore's allegations about her negative interactions with her supervisors at Merakey do not allege a plausible race-based hostile work environment claim. While she describes criticism by supervisors, a liberal reading of the SAC indicates those comments were concerned with performance-related issues, and she does not allege that the comments about her poor work occurred because of her race. For example, she does not allege that any person used a racial

epithet, commented on her race, compared her to another person of a different race, or otherwise injected race in a severe or pervasive manner into the workplace that interfered with her performance. *See Shah v. Mayorkas*, No. 22-5945, 2024 WL 6078135, at *7 (D.N.J. Mar. 18, 2024), *report and recommendation adopted*, 2024 WL 6079540 (D.N.J. Apr. 5, 2024) (dismissing hostile work environment claim where "[n]oticeably absent from the Amended Complaint are any allegations that plaintiff was subjected to anything in the nature of intimidation, threats, ridicule, derogatory or offensive comments about her race, national origin, gender, or age, or abusive conduct that interfered with her work performance.") Accordingly, the hostile work environment claim will also be dismissed.

## IV.   CONCLUSION

For these reasons, the SAC will be dismissed. Having provided Gallimore with three opportunities to state her claims plausibly, further attempt at amendment would be futile so the dismissal will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"); *see also Gowans v. Axsom*, No. 25-2070, 2025 WL 2848907, at *2 (3d Cir. Oct. 8, 2025) (*per curiam*) (affirming where district court instructed plaintiff about the deficiencies in his complaint and gave leave to amend but the plaintiff's subsequent filing "did not heed the Court's direction"). An order of dismissal will be entered separately. Fed. R. Civ. P. 58(a).

BY THE COURT:

_____
KAI N. SCOTT, J.